**In the Matter of Daniel DeARMOND.**

**No. 82S00–9106–DI–426.**

Supreme Court of Indiana.

Sept. 23, 1993.

No appearance for respondent.

Jeffrey D. Todd, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

DISCIPLINARY ACTION

PER CURIAM.

Daniel DeArmond, the Respondent in this case, was charged in a four count complaint for disciplinary action with, among other matters, committing a criminal act that reflects adversely on his fitness as a lawyer. On February 10, 1993, pursuant to the Hearing Officer's recommendation, this Court suspended the Respondent pending final determination of this case. After a hearing on the merits of the complaint, the Hearing Officer also tendered her findings of fact, and the case is now before us for final decision. Though given proper notice, Respondent failed to appear at the hearing before the Hearing Officer, and neither party has challenged the tendered findings of fact. That being the case, this Court approves and adopts the same.

*Count I.*

Respondent DeArmond was admitted to the Bar of the State of Indiana in 1986. In early 1990, Mark Garrett (hereinafter "Garrett") retained Respondent to defend him on multiple criminal charges in the United States District Court, Western District of Kentucky at Owensboro. The trial was scheduled to begin on August 20, 1990. The Respondent, however, failed to appear at the trial despite indicating on August 17, 1990, to the Assistant U.S. Attorney, that he was prepared for trial and indicating to Garrett on August 20, the same thing. After Respondent failed to appear, the presiding judge contacted him by telephone to inquire why. Respondent's answer was that he had intended to try the case but that he had just decided he "did not want to be a lawyer any more." Garrett's case was eventually resolved through a plea agreement.

*Count II.*

On September 22, 1990, the Respondent was arrested and charged with Battery, a Class A Misdemeanor. The charges were the result of an incident that took place that morning. The Respondent had gone to the residence of his estranged wife and had requested access into the dwelling. When she denied his request, Respondent began pulling and kicking at the door. She fled through a rear door to a nearby convenience store. Respondent caught up with her, knocked her to the ground, twisted her arm behind her back, and squeezed and twisted her neck.

On November 12, 1990, Respondent and the prosecution entered into an agreement whereby Respondent agreed to enter into a pretrial diversion program consisting of continued counseling and therapy for at least one year, after which the State would dismiss the charges. The Battery charge was dismissed on November 14, 1991, pursuant to the pretrial diversion agreement.

*Count III.*

The Commission presented no evidence under Count III, and the Hearing Officer dismissed the charge. We concur.

*Count IV.*

On January 21, 1992, Respondent entered the United States Post Office in St. John, Indiana, where Respondent's mother, Audrey DeArmond, was employed as a postmaster. Without provocation, Respondent struck his mother in the face with his hand as many as five times, breaking her nose and bones in her cheek and jaw. Audrey DeArmond fell to the ground, and Respondent continued to attack her by kicking her as many as fifteen times, causing bruises and dislocating her coccyx bone.

Police were summoned, Respondent was arrested and later charged with Battery Resulting In Serious Bodily Injury, a Class C Felony. At this initial hearing, Respondent admitted to the trial court that he was fully competent, that he had no defense and wished to plead guilty. At his bond reduction hearing on January 28, 1992, his mother testified about a previous attack by Respondent. At the time, Respondent was residing with his mother. On March 12, 1991, shortly after midnight and after Mrs. DeArmond had fallen asleep, Respondent kicked open her bedroom door and said

"get your f-ing clothes on and take me to the nut house." After getting dressed, she proceeded to sit on the couch to put on her shoes. Respondent threw a baseball bat at her and said to her "(I) planned to bludgeon you to death but I don't have the balls to do it."

Respondent was charged and on April 3, 1992, he pleaded guilty to a felony. His plea was accepted, and he was sentenced to four years, two of which were suspended, and the remaining two were to be served at the Kimbrough Center in Crown Point, Indiana. In addition, upon his release from said Center, Respondent was ordered on probation for two years during which he was to receive psychological treatment and counseling and obey all orders given by the treating doctors.

It is clear from the findings under Count I that Respondent withdrew his representation improperly, in violation of Rule 1.16(d), and engaged in conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(d) of the *Rules of Professional Conduct.* We are also convinced that Respondent's criminal acts set out under Counts II and IV reflect adversely on his fitness as a lawyer. His shockingly heinous attacks on the victims indicate a basic lack of respect for human life and legal profession. The Comment to Rule 8.4(b) of the *Rules of Professional Conduct* enumerates offenses involving violence as the sort of criminal acts which reflect adversely on a lawyer's professional fitness. Thus, we conclude that the Respondent committed criminal acts that reflect adversely on his fitness as a lawyer and so violated Rule 8.4(b) of the *Rules of Professional Conduct.*

The overwhelming evidence of Respondent's senseless violence, coupled with his cavalier treatment of his client and the courts, convince us that the strongest sanction available is warranted in this case. Accordingly, we conclude that Respondent should be disbarred. It is, therefore, ordered that Daniel DeArmond is hereby disbarred.

Cost of this proceeding are assessed against Respondent.